CASE ET AL., APPELLEES, *v.* INDUSTRIAL COMMISSION OF
OHIO, APPELLANT.

(Decided October 24, 1939.)

*Mr. Fred Cramer* and *Mr. C. W. Elliott,* for ap-
pellees.
*Mr. Herbert S. Duffy* and *Mr. C. Donald Dilatush,*
for appellant.

MATTHEWS, J. The question presented by this appeal is whether the record shows substantial evidence, not manifestly outweighed by contrary evidence, that the relation existing between Walter V. Case and The Troy-Pearl Laundry Company was that of employer and employee, within the meaning of the Workmen's Compensation Act. There was no writing evidencing the terms of the relation. No witness testified to any oral agreement between the parties on the subject. The conduct of the parties furnishes the only light found in the record. Whether it is sufficiently strong to distinguish the relation of employer and employee from that of employer and independent contractor, or some other relation, is the question.

The Troy-Pearl Laundry Company's place of business was located at Dayton, Ohio, where it conducted a laundry and dry cleaning business. Walter V. Case resided with his wife and children in Middletown, Ohio. Our first glimpse of him is as a driver of a truck for The Middletown Laundry and Union Sanitary Laundry. After two years there, he became an employee of a Mrs. Butterfield, who had "an agency" for The Troy-Pearl Laundry Company at that time. He worked for her for several years and when she became incompetent "he left her truck set, and came up to the laundry and asked them if they would do work for him if he could get a truck—could he be the Middletown agent and they said yes, so he got a truck of his own." Mrs. Butterfield had customers in Middletown, from whom she collected articles which she took to The Troy-Pearl Laundry Company, where they were laundered or dry cleaned, and were then returned by her to the customers from whom she had collected them. She collected the charges for the work done. Mr. Case continued this activity, acquiring new customers, and, perhaps, losing old ones, until his death in 1935, as the result of an automobile accident while he was so engaged.

In conducting this business, Mr. Case used his own truck, upon which he had painted, at his own expense, the name of The Troy-Pearl Laundry Company, or enough to identify it as the laundry that would do the work. He installed a telephone in his home and had it listed in the telephone directory under the name of The Troy-Pearl Laundry Company, all at his own expense. At his own expense, he had printed and used laundry slips with the name of the laundry at the top and under it his own name. He paid for the repairs to the truck, the gasoline and oil that were used to service it, the wages of a helper whom he employed from time to time, and all other expenses incurred in the conduct of the enterprise.

The Troy-Pearl Laundry Company did the laundering or dry cleaning, wrapped the articles in paper for each owner, placed thereon its own laundry slip with the charge for each article designated thereon, and placed all such bundles in a bin used exclusively for articles intended for Case. There were similar bins for other deliveries. The employer also maintained an instruction box for employees, where messages intended for Case were placed. There were similar boxes for others.

On the employer's books only one account was kept and that was an account between it and Case. The names of the customers from whom Case collected the articles did not appear upon its books. When it was claimed that articles had been lost or damaged, Case reported the circumstances to the employer who, through Case, made the adjustment with the owner of the article.

Case collected the entire charge from his customers. The agreement undoubtedly was that the employer was to receive sixty-five per cent of the entire charge and Case thirty-five per cent. Case's share was designated commissions. The parties certainly contemplated that Case would pay The Troy-Pearl Laundry

Company its share immediately upon collection. However, it appears that the account showed a debit against Case of $1,651.10, at the time of his death. Whether this resulted from inability to collect from his customers or from failure to pay The Troy-Pearl Laundry Company after collection does not clearly appear, although there is the suggestion in the record that Case extended credit to some customers who defaulted in payment. It would seem that Case guaranteed the payment when he extended credit. The employer's books show that he was indebted almost from the beginning of the relation. Notwithstanding, he was paid $6 regularly each week and these payments were described as expenses on the books.

This is substantially all the record shows of the relation existing between the parties, excepting that The Troy-Pearl Laundry Company delivered packages to Case, frequently over a rather long period, for delivery to two specific customers by name, and, generally speaking, communicated to him all the information relating to the customers and the business as its nature required to develop and carry it on.

The Common Pleas Court was of the opinion that there was substantial evidence that the relation was that of employer and employee and submitted the issue to the jury for its determination. The jury found a verdict in favor of the plaintiff and judgment was rendered upon that verdict. It is from that judgment that this appeal was taken.

We are confronted with the task of determining whether any reasonable inference or inferences can be drawn from this state of facts making it reasonable to conclude that it is more probable that the relation was that of employer and employee rather than some other relation. As the burden of proof is upon the plaintiff unless we find such inferences, we must hold that there has been a failure of proof which would require us to reverse the judgment.

Now what is the test or tests of the relation of employer and employee? We shall not attempt an all-inclusive answer. It is sufficient for our purposes to quote from 26 Ohio Jurisprudence, 152, Section 6, that: "The relationship of master and servant is primarily dependent upon the employer's right to direct the manner in which the work shall be done. Selection and engagement, payment of wages, and the power of dismissal are relevant, but not conclusive as to the existence of such relationship," and at 154, Section 8, that: "The mere fact that persons performing work for another are paid by the piece or job does not necessarily negative the existence of the master and servant relationship * * *," and at 155, Section 9, that: "The fact that the employee is to furnish his own tools to work with does not necessarily affect the legal relation between the parties, except as to the matter of compensation."

The decision of this case does not require us to determine the exact relation existing between Case and The Troy-Pearl Laundry Company. We are required only to determine whether there is substantial evidence from which the jury could conclude that it is more probable than otherwise that The Troy-Pearl Laundry Company had the right to direct Case as to the manner of collecting and delivering the laundry articles. If there is such evidence, we cannot set aside the jury's finding that he was an employee and entitled to participate in the Workmen's Compensation Fund.

There is no dispute that Case was engaged in a transaction that concerned The Troy-Pearl Laundry Company at the time in question. He had collected articles and was on the way to the establishment of The Troy-Pearl Laundry Company to leave them to be laundered, all according to prior arrangements with it. He was conducting an integral part of its business as carried on from day to day. Was he so engaged in the capacity of an employee? There is no direct

evidence—written or oral—of the agreement. Unless the agreement is to be placed in the category of the unproven, we must find, in the facts and circumstances, the light from which it radiates, with sufficient strength to justify a reasonably cautious person in proceeding to a conclusion.

Now, The Troy-Pearl Laundry Company knew that its name had been on the truck used in collecting and distributing these articles. This was evidence of its ownership of that truck. That inference was permissible. *Sobolovitz* v. *Lubric Oil Co.*, 107 Ohio St., 204, 140 N. E., 634. The fact that the evidence shows that Case bought the truck, and that title stood in his name does not exclude all inference of some sort of right to its use by The Troy-Pearl Laundry Company. To so conclude would be contrary to all experience. This still stops short of any inference as to the relation of Case, the operator, to The Troy-Pearl Laundry Company, in driving the truck along the highway at the time of the accident. It is necessary to proceed one step further to entitle the plaintiff to compensation. If we have reached a cul-de-sac, no right has been shown. We believe the evidence discloses, at least, a possible outlet, and, if believed, a probable outlet. It appears that the laundry slips had printed on them the name "The Troy-Pearl Laundry Co., Walter V. Case." It is clear that his name was placed there to show that he was an agent of The Troy-Pearl Laundry Company. It is true that an agent, strictly speaking, is an employee, whose action on behalf of his principal results in binding him in a contractual obligation to a third person. Case bound The Troy-Pearl Laundry Company to the owners of the articles on numerous occasions, in fact, every time he collected an article to be laundered. A servant or employee simply acts for the master or employer and usually according to his directions, without discretion. "The true distinction, therefore, is between representing another in busi-

ness dealings with third persons, and working for or serving another when no contractual obligation is to result." 26 Ohio Jurisprudence, 153, Section 7.

We are of the opinion that the legend on the truck combined with the legend on the laundry slips, together with the conduct of the parties, constituted circumstantial evidence that the truck carrying these slips was being operated by an agent, and an agent operating a truck is an employee.

There is another item of evidence which we think is significant and probative of the agency relation, and that is the fact that The Troy-Pearl Laundry Company recognized its liability directly to the owners of the articles laundered by it for their loss or damage. If Case had been conducting an independent business, there would have been no contractual relation between such owners and The Troy-Pearl Laundry Company. Case was an agent for the purpose of making such contracts, and was so engaged at the time. In that view, also, he was an employee.

It is true that other data could be marshaled from which the inference could be drawn that Case was engaged in an independent business, but to reach this conclusion, it would be necessary to disregard the inference to be drawn from the evidence to which we have referred, which, if drawn, leads to the opposite conclusion. And the jury reached the opposite conclusion.

Another cogent circumstance tending to prove that the relation was that of employer and employee is that it could be terminated at any time by The Troy-Pearl Laundry Company, without liability. Of course, that is also consistent with the relation of dealer and customer, but there are facts and circumstances tending to negative that relation.

Without assuming to determine the fact (we are not

the triers of the facts), our conclusion is that we cannot say as a matter of law that there is no evidence that Case was an employee or that the jury's finding that he was an employee is so manifestly against the weight of the evidence as to require a reversal of the judgment.

We find no conflict between the principles announced here and those stated in *Industrial Commission* v. *McAdow,* 126 Ohio St., 198, 184 N. E., 759; *Industrial Commission* v. *Laird,* 126 Ohio St., 617, 186 N. E., 718, and other cases relied upon by the appellant. The right to direct as to the manner of doing the work is recognized here as in those cases. In the *McAdow case,* the contract was evidenced by a written resolution, and, of course, its construction was the function of the court. The court construed it to create the relation of employer and independent contractor. As construed it was a binding contract for a specific piece of work with no right to discharge. It bears no resemblance to the case at bar. In the *Laird case, supra,* there was no written contract. The exact relationship involved was in doubt. However, there was no testimony that the employers bound themselves to pay a definite amount for a definite job, and there was nothing to show that they could not have terminated the relation at any time without liability. The case is almost identical in all substantial respects with the case at bar. The court held that the evidence presented an issue of fact for the jury to decide. The court in the *Laird case, supra,* at 619 *et seq.,* said: "The power of the employer to terminate the work at any time is absolutely incompatible with the full control of the work enjoyed by an independent contractor, and is a strong circumstance tending to show the subserviency of the employee." The jury resolved the issue in favor of the plaintiff, and the court affirmed that conclusion.

Our conclusion is that we should not disturb the jury's finding in the case at bar.

*Judgment affirmed.*

HAMILTON, P. J., and Ross, J., concur.