820 F.2d 405
 40 Ed. Law Rep. 74
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Wayne D. DERYCK, Plaintiff-Appellant,
v.
AKRON CITY SCHOOL DISTRICT; Robert V. Bullis, individually
and as Assistant to the Superintendent; and Thomas L.
Mitchell, individually and as Coordinator of Transportation
Services, Defendants-Appellees.
 No. 86-3443.
 United States Court of Appeals, Sixth Circuit.
 June 9, 1987.
 
 Before KRUPANSKY and GUY, Circuit Judges, and GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, Wayne D. Deryck, a contract van driver for the defendants (Akron or School District), had his contract terminated when he could not meet his contract obligations. Deryck filed a 42 U.S.C. Sec. 1983 action against the defendants seeking reinstatement and damages. The district court granted summary judgment in favor of defendants finding that Deryck had no right in continued employment as a van driver, and that, even if he did, he received a pretermination hearing that met the requirements of Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985). Although we agree with the conclusions reached by District Judge Dowd, we depart slightly from his analysis in affirming.
 
 I.
 
 2
 The operative facts are simple to state and not in dispute. The defendants, as part of their obligation to educate handicapped and retarded children, must supply transportation for such students. In order to accomplish such transportation the defendants contract annually with a number of independent individuals to provide van service as opposed to transporting the students in the defendants' regular "yellow school bus" program.
 
 
 3
 On August 20, 1984, the plaintiff entered into a service contract with defendants to provide transportation for nine students to and from school for the 1984-85 school year. This contract provided inter alia:
 
 
 4
 It is understood that Wayne D. Deryck is free of other obligations and is the driver of record during the period in which he/she is performing the above services. Substitute drivers may be utilized only during period of illness and emergencies. Exceptions to this policy must be approved by the Assistant to the Superintendent, Division of Business and Finance.
 
 
 5
 (App. 18).
 
 
 6
 The plaintiff had a regular job with the post office in addition to his part-time work as a van driver. In October of 1984, Deryck injured his shoulder while working at his post office job. This injury prevented Deryck from carrying out his van driver duties and he employed a substitute to take his place.
 
 
 7
 In December of 1984, it also became apparent to Deryck that his post office work schedule, although flexible to a degree, would periodically prevent him from fulfilling his contractual obligations as a van driver. After discussion back and forth on this matter, Deryck requested that his contract be modified to allow for substitute drivers. This request was denied and Deryck was informed by letter dated January 30, 1985, that he would have to fulfill all his contractual obligations except for periods of illness or emergencies. Deryck did not reply to the letter and on February 15, 1985, his contract was terminated. This litigation followed.
 
 II.
 
 8
 The principal thrust of defendants' summary judgment motion was that Deryck was an independent contractor and as such had no rights enforceable under Sec. 1983. The district court in granting summary judgment addressed the issue from a somewhat different perspective and held:
 
 
 9
 Viewing the facts in a light most favorable to Deryck, and assuming that he is not an independent contractor, the Court finds that the defendant is entitled to judgment as a matter of law.
 
 
 10
 App. at 12-13. Judge Dowd then went on to decide that Deryck was not a member of the classified service and thus had no protected property interest. The court also concluded that:
 
 
 11
 Even assuming that Deryck did possess a right in continued employment as a contract van driver, the Court concludes that Deryck received the due process equivalent of a pretermination hearing. The rationale behind Loudermill 's requirement of a pretermination hearing is to allow for "some opportunity for the employee to present his side of the case," and a "meaningful opportunity to invoke the discretion of the decisionmaker ... before the termination takes effect." Loudermill, 105 S.Ct. at 1494. In this case, the meeting between Deryck and Bullis fulfilled the purposes behind the requirement of conducting a pretermination hearing.
 
 
 12
 App. at 7-8.
 
 
 13
 Although we tend to agree with Judge Dowd's analysis, the position presented by the plaintiff on appeal is that:
 
 
 14
 Neither party argued or briefed what the Court later, sua sponte, found to be dispositive, to-wit: Plaintiff's status as an "unclassified" civil servant.
 
 
 15
 There was no evidence, cognizable under Rule 56, before the Court dealing with the civil service classification process for Akron School Board Bus drivers at all.
 
 
 16
 Appellant's Brief at 14. We find it unnecessary to pursue this argument since we conclude that Deryck clearly was an independent contractor and that the resolution of this issue, which was addressed at length by both parties below, is dispositive.
 
 III.
 
 17
 The record that the court had before it on the summary judgment motion clearly demonstrates that plaintiff was an independent contractor.
 
 
 18
 Unlike a Rule 12 motion, in which a party's allegations in the pleadings must be accepted, a court in considering summary judgment may look behind the pleadings to facts developed during discovery.
 
 
 19
 George C. Frey Ready Mix Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 554 (2nd Cir.1977).
 
 
 20
 It is undisputed that Deryck owned his own insurance for the van. He was responsible for all maintenance and operation costs. He was paid a flat $50.00 per day for each day he drove. No withholding, F.I.C.A., pension, or other deductions were made. He had no paid vacation days or sick leave, no hospitalization, no fringe benefits whatsoever. Deryck submitted monthly invoices for payment. On the sums received he paid quarterly estimated income taxes and, when he filed his annual income tax, he took all his expenses of operation as one does when operating an independent business. He was responsible for securing and paying substitutes for days he could not drive. Last, but by no means least, plaintiff did his van driving while holding down another full-time job at the post office.
 
 
 21
 As a practical matter, Deryck offers little to rebut or even detract from all the indicia of independent contractor status. He relies primarily on the fact that he was issued a "contract van drivers handbook" which contained certain policy and procedure guidelines which he was required to follow.[1] Such things as not hitting the children, reporting all accidents, no pets, no smoking, and following a designated route are covered in the handbook. From this Deryck argues that this indicates a power to control the "servant's" conduct which is inconsistent with independent contractor status. Case v. Industrial Commission, 62 Ohio App. 219, 15 Ohio Ops. 540, 23 N.E.2d 652 (1939). Although this argument has a certain superficial appeal, it will not stand scrutiny. What the defendants essentially are doing here is renting a number of vans on a daily basis. By renting they avoid large capital outlays and they also avoid all of the collateral fringe costs that result from adding regular employees. It is no different than if the defendants decided to contract with a caterer to provide the school's lunch programs instead of providing them in-house. The fact, for example, that the school district might dictate where and when the lunches had to be delivered, that there must be at least two main entrees each day, at least one of which had to be hot, that the meals had to have a certain nutritional balance, and that the serving dishes had to be compatible with the fixtures and equipment already in place would not change the caterer's status to that of employee from independent contractor.
 
 
 22
 When it is services that are being contracted out, the party contracting for the services can do so with significant specificity without changing the nature of the relationship. In such cases the other indicia of employer-employee relationships, such as payment of wages or salary and the unilateral right of dismissal without cause, become more important. Here, the School District had the responsibility for the handicapped and retarded being transported. Detailed specifications for the safety of the children were mandated. There is no reason in fact or law, however, that would dictate that this must result in the creation of an employer-employee relationship between contracting parties.
 
 
 23
 AFFIRMED.
 
 
 
 *
 Honorable Horace W. Gilmore, United States District Court, Eastern District of Michigan, sitting by designation
 
 
 [1]
 See Appellant's Reply Brief, pp. 20-24